IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HOLLY CATHERINE ROMERO,

           Plaintiff,

vs.                              Case No. 13-1064-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

           Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On September 23, 2011, administrative law judge (ALJ) James Harty issued his decision (R. at 21-34). Plaintiff alleges that she had been disabled since February 5, 2009 (R. at 21). Plaintiff is insured for disability insurance benefits through

March 31, 2010 (R. at 24). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 24). At step two, the ALJ found that plaintiff has the following severe impairments: headaches, reactive airways, bipolar I disorder, general anxiety disorder/anxiety disorder, personality disorder-not otherwise specified, major depressive disorder with psychotic features, post traumatic stress disorder, panic disorder with agoraphobia, dependent personality disorder (R. at 24). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 25). After determining plaintiff's RFC (R. at 26), the ALJ determined at step four that plaintiff is unable to perform any past relevant work (R. at 31). At step five, the ALJ determined that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 32-33). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 34).

**III. Did the ALJ err in finding that plaintiff's impairments do not meet or equal listed impairment 12.04, 12.06 and/or 12.08?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "all" of the criteria of the listed

5

impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

In the case before the court there are two medical source opinions that address whether plaintiff's impairments meet or equal listed impairments 12.02, 12.04, and 12.08.  One opinion is from a treatment provider (R. at 442-447), and the other one is from a non-examining medical source (R. at 410-426, 435).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective

medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;

7

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Treating source opinions on issues that are reserved to the Commissioner[2] should be carefully considered and must never be ignored, but they are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled. SSR 96-5p, 1996 WL 374183 at *2-3.

---

[2] Issues reserved to the Commissioner include: (1) whether an claimant's impairment meets or is equivalent in severity to a listed impairment, (2) a claimant's RFC, (3) whether a claimant can perform past relevant work, and (4) whether a claimant is disabled. SSR 96-5p, 1996 WL 374183 at *2.

8

Plaintiff alleges that the ALJ erred by rejecting the medical opinion evidence of Dr. Lear, a treatment provider, that plaintiff's impairments met the "B" criteria of 12.04, 12.06 and 12.08. The ALJ found that plaintiff's impairments did not meet or equal listed impairment 12.04 (affective disorders), 12.06 (anxiety related disorders) or 12.08 (personality disorders).[3] More specifically, the ALJ found that plaintiff's impairments do not meet the "B" criteria of 12.04, 12.06 and 12.08 (R. at 25-26). The "B" criteria of 12.04, 12.06 and 12.08 are as follows:

> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 511-513).

Dr. Lear and ARNP (advanced registered nurse practitioner) Mileham opined that plaintiff had moderate restrictions in activities of daily living; marked restrictions in maintaining social functioning; marked deficiencies of concentration,

---

[3] Listed impairments 12.04, 12.06 and 12.08 are met when both the "A" and the "B" criteria are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2013 at 511-513, emphasis added).

9

persistence or pace; and three episodes of decompensation (R. at 446). The ALJ stated the following regarding this opinion:

> The opinion cites that the claimant has had three episodes of decompensation in the last twelve months, each of at least two weeks duration. However, there is no objective evidence in the record of such occurrences. Records above show that the claimant did not report any such episodes in the last twelve months. In addition, they stated that the claimant had a current history of being unable to function outside of a highly supportive living arrangement and that even a minimal change in the claimant's environment caused her to decompensate. Again, there is no evidence of these types of conditions in the record and no explanation of where such allegations come from in the objective evidence. Claimant was also rated as marked in areas of social functioning, concentration, persistence and pace. There is no evidence of these marked limitations, as the claimant in June 2009 had no problems with memory according to objective testing and did not no records of a treatment provider show such limitations. There are notes that the claimant is unable to process detailed instructions and that she has a social phobia which prevents her from dealing with the public, but those limitations are reflected in other opinions which do not conclude such extreme limitations are warranted. (Exhibit 8F at 4) This opinion is given some weight, as the record does show the claimant is somewhat limited by large groups of people and that she has some problems with detailed instructions. However, the functional limitations described by the narrative and supported by the objective medical testing and treatment notes as of the date of this opinion do not support such extreme limitations and certainly do not support the listing level allegations in this opinion.

(R. at 30).

The record also includes a psychiatric review technique form by Dr. Adams, dated June 10, 2009. Dr. Adams opined that plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (R. at 410-422). These opinions were reviewed and affirmed by Dr. Stern on December 11, 2009 (R. at 435).

The ALJ noted that Dr. Adams reviewed a psychological evaluation performed by Dr. Milner on June 5, 2009 (R. at 31, 405-409). Dr. Milner interviewed plaintiff and conducted a mental status examination. She found that plaintiff's short-term memory was good. Plaintiff was found to be functioning in the average range of intelligence and was able to understand, remember and carry out a variety of instructions. Plaintiff was found to be able to interact appropriately with supervisors and co-workers but panics with too many people. Plaintiff was also found to be able to maintain concentration and attention sufficient to carry out simple one or two step tasks. Under prognosis, Dr. Milner stated that plaintiff is immobilized by anxiety and depression much of the time and seems never to be stable. She also opined that plaintiff is a poor prospect for work due to her loser attitude, not caring about anything, bi-

polar swings, anxiety around others and possible brain damage following several head trauma experiences (R. at 407-408).

The ALJ gave significant weight to the opinions of Dr. Milner because her opinions were based on objective testing and is from a mental health provider (R. at 30). The ALJ gave significant weight to the opinions of Dr. Adams and Dr. Stern, noting its reliance on the opinions of Dr. Milner; it was thus consistent with the testing performed by Dr. Milner (R. at 31).

Plaintiff argues that the ALJ erred by finding that plaintiff had only a mild impairment in activities of daily living; plaintiff argues that the evidence supports a marked limitation in this category (Doc. 16 at 31). However, even Dr. Lear opined that plaintiff only had a moderate limitation in this category (R. at 446). There is no medical opinion evidence that supports a finding of a marked limitation in this category. Given the undisputed medical evidence in this category, the court finds that plaintiff's argument is without merit.

Plaintiff next argues that the evidence supports a marked limitation in social functioning (Doc. 16 at 32); the ALJ found that plaintiff only had a moderate limitation in this category (R. at 26). Although Dr. Lear found that plaintiff had a marked limitation in this category, Dr. Adams opined that plaintiff only had a moderate limitation in this category. Dr. Milner, based on a mental status examination, found that plaintiff was

able to interact appropriately with supervisors and co-workers, but panics with too many people (R. at 408). The ALJ gave significant weight to the opinions of Dr. Milner based on her testing.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court finds that there is sufficient evidence to support a finding that plaintiff only has moderate difficulties in social functioning.

Plaintiff next argues that the evidence supports a marked limitation in concentration, persistence, or pace (Doc. 16 at 33); the ALJ found that plaintiff only had a moderate limitation in this category (R. at 26). Although Dr. Lear found that plaintiff had a marked limitation in this category, Dr. Adams opined that plaintiff only had a moderate limitation in this category. Dr. Milner opined that plaintiff is able to maintain concentration and attention sufficiently to carry out simple one

or two step tasks (R. at 408). Plaintiff cites to a medical record dated May 5, 2010 stating that plaintiff had poor attention span and concentration (R. at 489). However, mental health treatment records from October 27, 2009, December 16, 2009, February 2, 2010, May 5, 2010, August 9, 2010 and September 7, 2010 indicate that plaintiff's attention and concentration were intact (R. at 430, 454, 462, 472, 515, 522). The court finds that there is sufficient evidence to support a finding that plaintiff only has moderate difficulties in concentration, persistence, or pace.[4]

In summary, for the reasons set forth above, the court finds that sufficient evidence exists in the record to support the ALJ's determination that plaintiff's impairments do not satisfy the "B" requirements for these listed impairments. For this reason, the court finds no error in the ALJ's finding that plaintiff's impairments do not meet or equal listed impairment 12.04, 12.06 and 12.08.

**IV. Did the ALJ err in his credibility analysis?**

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively

---

[4] Plaintiff does not contest the ALJ's finding that plaintiff has experienced no episodes of decompensation. Furthermore, plaintiff does not dispute the ALJ finding that there is no objective evidence in the record that supports Dr. Lear's assertion that there had been three episodes of decompensation in the last 12 months (R. at 30).

linked to substantial evidence and not just a conclusion in the guise of findings. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff. Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Furthermore, the ALJ need not discuss every relevant factor in evaluating pain testimony. Bates v. Barnhart, 222 F. Supp.2d 1252, 1260 (D. Kan. 2002). An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why. McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002). It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible. Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004). On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the

15

record, will be affirmed by the court. White, 287 F.3d at 909-910.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff takes issue with the ALJ's reference to plaintiff's activities of daily living. The ALJ does reference those activities, but does not indicate that such activities indicate that plaintiff is capable of working (R. at 27-28). The court finds no error in the ALJ's discussion of plaintiff's activities of daily living.

16

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 26th day of March 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge